Good morning, my name is Ted Lorenz. I represent the appellant Karen Cappuccio. I'd like to reserve a few moments if I may. Ms. Cappuccio was the victim of a bait-and-switch mortgage transaction. She was duped into taking loans that she didn't want and that were not beneficial to her. And there was an abundance of evidence upon which the jury found, by clear and convincing evidence, that she was a victim of mortgage fraud. And this fraud, Your Honors, included the late delivery of the required standards of the Truth in Lending Act. When it came time for the jury to be instructed on how to decide the decision issue, the judge instructed the jury on a conclusive presumption of receipt on the day of the closing that simply does not exist in the Truth in Lending Act. She decided to receive, didn't she? Excuse me? To receive for the notice to cancel? After closing, Your Honor, she signed an acknowledgment of receipt. One with many other documents, which really were not shown to her. This was a fast-paced closing, which took place on a Friday night at a loan closer's house in Bethlehem, Pennsylvania, while her husband's watching TV and there's dogs barking and she's going around the kitchen. Apart from that, she signed a receipt of how you received a notice to cancellation. And she says, I never really got it. I just signed the receipt. Is that what you're presenting? You don't dispute that she signed the receipt? I don't dispute it, Your Honor. But she walked out of that closing with no documents. And the documents were sent to her later by UPS. She did eventually receive the notice to cancel? She did eventually receive. The closing occurred on November 3rd, 2006. She didn't know at the time she had been placed into this split room with negative advertising features and adjustable interest rates. Much like we've come to learn now. You know, the industry's been exposed at this point of all these bad loans. Is it of any consequence, Mr. Lawrence, that she eventually did get a notice to cancel, which explicitly says you have three days within which to cancel this loan transaction, and she did not? There is consequence to the extent that she received those, but they certainly were not clear, conspicuous, and accurate, as this court requires in Rossman, as this court requires in Porter. Why were they not? Because they were received, and in the context of this case, Your Honor, they were received post-closing, and it had a rescission date clearly in there of November 7th. But she didn't receive the first package until November 9th. And then once that rescission period expired, she received the second package on November 14th. And it was only then that she was first apprised of the entire loan transaction that took place. I thought Judge Fisher was asking me about the content of the notice itself, which says that you have a right to cancel this transaction, you have a right to have it mailed, and whichever date, if it's the latter date, you have three days, et cetera. Why wasn't that clear? It's not clear in the context of this case, Your Honor, because as I was trying, I hope this answer is clear, Your Honor, is that when we look at the notice, when we pull the notice up, it says the closing date, and then at the bottom, it says, there's no other language there, but the bottom, in bold capital letters, it says you must rescind by November 7th. And that's the problem there, and the Truth in Lending Act, to protect— Is that self-fact alone sufficient to create confusion and inaction on her part? Certainly, Your Honor, that standing alone would be my contention that it does, because it's an inaccurate date. The Truth in Lending Act requires accuracy. That's clear, right, in relation to— This whole case proceeded on that basis, didn't it? I mean, in other words, the question presented to the jury was a question of presumption based on her having signed a notice of receipt at the closing. Well, there was a jury instruction, Your Honor, given to the jury, that she was presumed to have received those documents as of the date of their closing. We contend and argue that that presumption is totally wrong. There is no conclusive presumption of receipt. There is only under the Truth in Lending Act. The case proceeded to the jury on that basis, so we don't really consider the notices she received after the closing. Is that accurate? No, because part of the argument and part of the presentation to the jury was that she did not receive the notice to which she was entitled under the Truth in Lending Act, and therefore her rescission period was a three-year period, and she properly rescinded, and the loan should have been rescinded. That's irregardless of whether she got it at the closing or a couple of days later? Well, if she had, in fact, received the disclosures at closing that was properly completed. Of course, a lender can't hide behind these disclosure forms. That actually was the jury's finding, was it? It was the jury on the inverted form did indicate that a finding of fraud on November 3rd. She got the notice at the closing. That's what the jury concluded. Based upon, though it's not as easy as that, it's based upon this erroneous jury instruction in which the judge said in jury instruction 18, she is presumed to have received it on the day of the closing, which is wrong. The Truth in Lending Act does no more than create a rebuttable presumption, but once met, goes away. But your second argument is that the judge also said in instruction 18 in the TILA case, something more than just a testimony in the bar was needed to rebut the presumption, that she received two copies of the notice. True. That's another argument. That's your second argument, is it not? Should the court, and I hope the court does not find that that was an appropriate instruction. Let's assume that was an incorrect instruction. An incorrect? Let's assume that that instruction, that part of the instruction was error. Wasn't that instruction harmless in the totality of the facts here? Absolutely not, Your Honor, because the jurors are told by the judge, I will tell you the law, and you are to follow the law. And the judge told the jurors that is the law, and that is not the law under the Truth in Lending Act. And if we were to adopt that, I don't think a consumer from here on out would ever stand a chance. And basically the Truth in Lending Act would be eviscerated. It would no longer be there to protect consumers from these bait-and-switch transactions. Because if she could have signed that document, could have said anything, could have said she's the president of E-Trade. And according to that instruction, she was presumed to be president of E-Trade. At these closings, we have to bring some real-world experience in these closings. But both are closed. What did you say? Was she an unsophisticated consumer? Or did she have some sense of intelligence and ability to read what she was signing? Or did she assume to agree to what you signed in the document? Well, Your Honor... Or are you saying she just didn't understand and was too fast-paced and the approach would excuse the fact that she signed all these documents? Well, the long closure... There was not an opportunity on Friday night at this closing where they were signing two sets of long closings to read the documents. It was sign here, sign here. Are you suggesting that she was an unsophisticated consumer? That was her choice. I mean, that argument's always made, but I didn't have a chance to read it. But any time something's put in front of you, you have the opportunity to read it, and you can say very clearly, wait a minute, I need a couple minutes to read this before I sign it. No practice is, nobody does. And more the practice in Pennsylvania is, Your Honor, that you don't need attorney representation. We go to these closings somewhere and they have to apparently have the ability to read complicated real estate documents. And they're thick, and they're thick with terms and vernacular that can be very hard to understand. And we go there and represent it. I'm sorry to cut you off, but I just want to follow up on this point of Judge Fischer. She had a chance to present her inability to read and the fast paces of the transaction in front of a jury. That's correct, Your Honor. The jury rejected, apparently rejected her contention. Well, the jury found fraud by clear and convincing evidence. But that was fraud, that was not fraud against E-Train, was it? Well, E-Train is the S&E of the law. The original order went bankrupt. But the explicit fraud finding was against countrywide mortgage. Well, it was against countrywide because they were not in the position of an S&E. But it involved the same cast of characters and it involved the same issues that were going on. So if we were to adopt this conclusive presumption of receipt, consumers stand absolutely no chance because whatever you sign as an acknowledgment would then be deemed to have been received. But the Truth in Lending Act, in addition to what you say, you just mentioned presumption again, but in addition to what you said was the error on the part of the judge in striking the jury that they had, she had to testify to something more than what she said. That's incorrect also, Your Honor. That was your answer before. But the presumption issue you raised first is that the judge should not have used the word presumption. Is that a good point? That's true, too. And that's because she said, I didn't receive it. And when she says that, the presumption, I guess, goes out of the way. The presumption that's right under the Truth in Lending Act, in Section 1635C, says it will do no more than create a rebuttable presumption. And it doesn't take much to rebut a presumption. And the testimony of a bar should be sufficient because many times that is all that you have. And so that should be sufficient to take that presumption away and allow the jury to decide the case based upon the facts as presented but not clouded with an instruction that says she is presumed to have received it. That effectively took it out of the jury's hands. They were handcuffed at that point. They had no other ability other than to find her. Is your objection to the presumption that she was presumed to have received it at the closing or she was presumed to have received it through the mail? Yes, that she was presumed to have received it at the closing because she did not and then... So that presumption starts the three-day clock. That's right. And then you want to... If we then take it the next step and that she received these on a standard basis in furtherance of the fraud on the 9th and the 14th, that the, I see I'm out of time, that the disclosures that we see were not clear, accurate, and conspicuous as required by the court of law. We'll get you back, Mr. Lawrence. Thank you very much. Thank you. Mr. Regan. Good morning, Your Honor. Justice Regan, on behalf of the advocate. Your Honor, there are several issues here, so please feel free. I'm going to address the strength of the presumption issue first, but if you want to consider the late delivery issues or the parole evidence issues, certainly not. I can tell you what the most troubling is since you've given me an invitation to body it. Okay. Which is the judge's instructions seem really troublesome when he tells the jury something more than their testimony is required. Is there a predicate for that somewhere? Is that part of TILA? Is that part of any statute or any law? You have to do something more than testify. Right, Your Honor. And there's been a certain amount of aspersions cast as to the underlying case law supporting my position, but in fact fairly aimed at all positions. It arose fairly early on and then was just repeated without analysis, including the borrower's case. I must say, though, that the case that we rely on the most was probably one of the earlier cases. It was a district court case, considering it in connection with the bankruptcy of the Rhodes matter, and that's at 80 Bankruptcy Reporter 938. In that case, the court actually reviewed the general law presumptions, the policies behind the presumptions, and then took a look at truth in lending and the limits of the presumption that was given to the lender, knowing that nonetheless it changes the evidentiary landscape in favor of the lender, but only so far as to not create the abomination that this court can abide by the so-called conclusive presumption. But Judge, you haven't really addressed the point directly, the instruction itself. I mean, you have a jury in the jury box. The judge says something more than the witness's testimony is required. So the jury can think a lot of things. First of all, she's not credible. Second of all, we need more documents. Third of all, she didn't testify sufficiently on this point, and therefore we're not going to believe her. There are all kinds of reactions on the part of the jury that one can imagine on the basis of this one instruction alone. Was it fair? Was it proper? Was it error? Well, I understand that, and trying to figure out what effect that had is always difficult the next day. That said, it was made clear at the hearing, both in argument and in connection with the entirety of the instruction given by the judge, that this was not by any means a conclusion that she had only given this and therefore was, as counsel suggests, a conclusive presumption, but that it could be overcome. It was merely demarcating the line above which the quantity of evidence must exceed in order to shift the burden and the persuasion. And counsel noted vigorously that the evidence, including the envelopes, including the alleged uncertainty of the closer, including the testimony of the broker, which was also alleged to be weak, that all those with presumption exceeded that line. I'm not sure it's helpful so far. Mr. Warren says there are really two issues here. One is the judge's instruction regarding presumptions and his view is that once the witness says, I didn't receive notice of presumption, it falls by the wayside. So you shouldn't have any further instruction on presumption. Separate from that is the judge's instruction about some additional evidence. So he's raising two separate points. You seem to be mixing the two. You can address them separately if you want. Well, as to the burden itself, what's being espoused here by the appellant is essentially an aberration of the burden that is less than what a normal litigate faces in civil court. Keep in mind that this situation only arises when a rescission doesn't occur in the normal three days. So necessarily, if we complain to the bottler, the bottler has to say, I didn't get it, if they're outside the three days. Otherwise, their complaint gets dismissed as being timely. To then face summary judgment, the courts say you can't just reiterate your allegations in the complaint. But that's essentially the aberration of this presumption, this being espoused by the appellant. All they have to do is say, I didn't get it, take that out of the complaint, put it in an affidavit, and it's gone. It certainly is not complete. But that's not what was said here. It's not that she said, I didn't get it. She said, I didn't get it until, which was past the rescission date. On the separate issue of the subsequent delivery, yes, that's true. I understand what you're saying. And both those issues may come up, either I didn't get it or I didn't get it when it says I got it. But the effect of both, as appellant argues, is the three-year extension. Now, I would disagree with that. On the subsequent delivery, the notice, which is a form notice from the board, indicates that you have until three days following this date or the later receipt of this notice or of certain other required notices. Why isn't testimony in court under oath that I didn't receive the notice sufficient? I mean, that becomes a matter of credibility, doesn't it? The jury can believe or disbelieve. Why doesn't that cause the presumption to fall by the white side and tell the judge, don't give any further instructions about presumption? It could very well be a policy decision, Your Honor, that, as in this case, the borrower has the facts, the lender, well, may not, especially in the signing as was the case here. And not unlike the mail-box delivery rule, we're not ever going to say that this quantum of evidence, even if it's believable in a vacuum, is not going to be sufficient to overcome the presumption. And that's what the cases I've cited in my brief hold, albeit without a whole lot of analysis. The contrary cases don't really analyze it too deeply either. So the question is, was that burden intended to be more than just procedural appendage, as the commentator calls it in my briefing, or was it intended to really heighten what is necessary to overcome the signed receipt? Because, as Your Honor points out, when somebody signs something, they're presumed to have read it, to have understood it, and to intend what they said. Did you request that instruction, or was it something the court just came up with on its own? That was a request for instruction from the defendant's side. The additional part of my evidence instruction on the testimony, and I'll read it to you again, it says, in a TLA case, something more than just a testimony of the borrower is needed to rebut the presumption. Not only did she testify that she didn't get it until she got it by mail, she testified, here are the UPS receipts, and look, I didn't get it in the mail until November 10th, until November 14th. It seems to me that if I'm a juror, sitting here hearing what I'm supposed to do, all of a sudden I'm told that nothing that the borrower said can be taken into consideration in rebutting his presumption. So it also goes to the receipts. That's, I mean, if it goes to the receipts, then you really have, I think you've, you've got, you're very close to pre-judicial instruction. I understand what you're saying, Your Honor. I'm sort of grappled with that as well, in my own mind. In other words, we speak, we communicate through speech. Interestingly, though, I think that the envelopes have public value in and of themselves. I mean, and I also have to flip this scenario around a little bit. I didn't get these on the day you said I did. Well, if not, show me the envelopes. Prove to me that they came here. Here they are. Because the fact that I have to say, here they are, meaning that these envelopes in and of themselves have no public value, I mean, the facts that I understand is that you claim there were checks inside those envelopes. That's correct. And you could just as well prove when they were sent as, and especially the GPS, you could prove when they were received. Sure. So why would you, why would you want her to come forward with what was, when she got them and what was in them? I mean, you could prove the same issue yourself before the jury. In this particular case, we were able to locate the title company that sent them, but it's not beyond the humble possibility that she has to, she doesn't have envelopes or they don't go by UPS or whatever. All she has is the borrower's word that they came later. Yeah. And I think in this particular case, because there was this additional evidence that was, you know, that was put before the jury quite forcibly from the record, that it was a harmless error in any regard. Right. But if it wasn't for the wording of that instruction, I might be willing to agree with you that the instruction would be harmless. But as I said, I think it's so close to implicating the testimony about the UPS receipts that that taken together literally gives her no ability to rebuttal. I understand your concern, Your Honor. I would say that, again, from the record, it's clear that the probative value of those envelopes and the alleged documents that were inside those envelopes, as it was portrayed to the jury and was put right on the table before them, was sufficient to bring home that that was an independent piece of evidence. Is the position of the defendant that inside those envelopes were closing papers? Yes. Okay. Yes. Copies of all the closing papers? Copies of the closing papers, which she did not receive until that subsequent point in time. Okay. So you would agree, then, that she did not receive the closing papers at the closing? No. We disagreed what was in those envelopes. That was a contested point. But her testimony was that they had the thickies. He asked you, is that the position of the defendant? Oh, I'm sorry. The defendant's position was that they contained the closing papers. Okay. Hold on a second. She got the closing papers at the closing? I'm confusing you. My apologies. The defendant was the borrower. I'm sorry. It was my client. My client's position, or actually it's presented by country law's position, that it was just the check. I apologize. It was just the check. It was just the check. She was the plaintiff's borrower. The position is that she got all the closing papers at the closing. Her position was that she got them in the envelopes that were delivered a few days after the closing. I'm going around in circles. Your position, the title company's position, after closing, what did she get? I understand. If you're asking about my client, through sad third-party evidence, our position was that she received the documents at closing. All the closing papers, including the notice of resignation, et cetera, and the right to cancel. When she was nailed, the two UPS, I think it was, envelopes, what was in the envelopes was? Checks. Correct. Because of the retention period, you can't fund a loan until a subsequent time. That's what I thought. That's what I could understand. Now, a second avenue toward behind those errors, even if one is to assume that the papers were delivered subsequently, she testified that my client's loan was in the last to arrive. Judge Fischer's question is, why didn't she just rescind it then? And Consol suggested that when she got the first one, she still didn't have full facts. She didn't know that there was another one coming a few days later. As I understand it, the rescission they had already passed. Well, Your Honor, again, the rescission is an option of three choices, whichever is later. And that's how the board sets forth the Palmer decision on the First Circuit, said under those circumstances that your average consumer can clearly understand that, okay, this option one, this date certainly has passed. But it also says I have three days after I get this particular notice, if that's later. And the Palmer decision said it was later. Now, counsel in briefing suggests that that's inconsistent with the Third Circuit approach. There is a new decision that happened after that, that was decided after a briefing that I'd like to bring the panel's attention to. It's a district court case authored by Judge Shurick, and it's Palmer v. Meribank. And at the moment, it's only published at 2010 U.S. District of Lexis. 10-7-3-4-0. And that contains a very interesting discussion about how the board decided before the 1995 amendments to Truth in Lending, when the hyper-technical compliance standard. The circuit courts to decide the proper approach until after that point, after 1995, when congressional intent was to reduce the hyper-technicality of complying with Truth in Lending and therefore try to reduce its costs, that the court might decide otherwise and expressly adopt the Palmer decision of the First Circuit in the Palmer case of the Eastern District. And the Palmer decision of the First Circuit says when a borrower receives the decision notice and it has three options, it can determine which of the three is the latest and reasonably conclude, therefore, I have three days. And as the record points out, the borrower in this case allegedly didn't even read the notice when it came in subsequently by her own testimony. Didn't read it completely, which is inconsistent with somebody who's getting something that they didn't expect and is panicked. Very good. Thank you, Mr. Shurick. Thank you. Your Honor. You say three minutes. There was an issue that wasn't addressed, which was the exclusion of evidence by the district court that you complain about. The parole evidence ruling? Yes. Yes. I can address that. There was no evidence here of additional fraud that I wanted to present to the jury in connection with all the claims, but it was blocked from doing so because of this parole evidence ruling. And as we briefed, I could understand it in connection with the, if there was a claim for fraud in the inducement, but in connection with, and I was most worried at time of trial about the Acola claim and I was worried, obviously, about a fraud claim and a table claim because the fraud permeated the entire transaction.  that the staggered delivery of the loan documents was done purposefully for the purpose of continuing to not let her know and hide from her the true reality of these loans while the rescission period passed. It started at the beginning when she didn't get any pre-settlement disclosures. The broker had always told her, you're okay, you're going to get the loan that you want. But the closing spoke to the broker, reassured again. And this was all part and parcel. So, Your Honor, it's our contention or argument that the application of the parole evidence to other claims in the case was an error. I was essentially gagged. There was a gag order and the objections were just numerous. It was just throughout the trial. And we were essentially gagged from arguing certain things. I just have a moment left and I'd like to raise again with the court what I'm really so concerned about here is if we were to adopt this presumption that if we take into account the reality of a loan closing out there on the street where people go and there's typically just this hired loan closer for $100 at the bar, no one explaining documents, that the lender is required to give clear, conspicuous, and accurate documents. And this court has spoken to that in Border and in Rossman. And like in Rossman, it doesn't mean it's accurate for a flash. At the moment, the closing happened. Let me ask you something. Wasn't the jury asked whether this notice was clear and conspicuous? It was part of the instruction, Your Honor, but they were not allowed to go there if they found the first question. The question, they might have reached the question, Your Honor. They could have, but I wish they had. Wait a second. That's really my question. Is that a job for the jury to determine whether a document is clear and conspicuous or is that a legal decision? Don't judges decide whether a contract is fair or not fair, but clear and conspicuous on these terms? If they were on the binder of a fact, then certainly, currently I guess if there were stipulated facts. But here, in the context of all this fraud that was presented, and the staggered receipt, and all the other evidence in the case, they could have then taken into account whether or not this was clear and conspicuous. And I just need you to look at the form, Your Honor, that TILA and the truth of TILA and the regulations he requires and in case, Your Honor, if it's the case, that there'd be precise data there. You'd be able to send it later. Thank you, Mr. Lawrence. Mr. Reed, thank you very much. Very good arguments. The case will be taken under advisement. The court will recess.